# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

JEREMY SOILEAU

CIVIL ACTION NO. 6:17-CV-00710

VERSUS

MAGISTRATE JUDGE HANNA

BAYWATER DRILLING, LLC

BY CONSENT OF THE PARTIES

## MEMORANDUM RULING

Currently pending is the motion for partial summary judgment (Rec. Doc. 22), which was filed by the defendant, Baywater Drilling, L.L.C. ("Baywater"), seeking dismissal of the plaintiff's claim for maintenance and cure, on the basis of the *McCorpen* defense. The plaintiff, Jeremy Soileau ("Soileau"), filed an opposition (Rec. Doc. 24), to which Baywater replied (Rec. Doc. 25). Oral argument was held on July 26, 2018. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the motion is GRANTED.

## BACKGROUND

This case was brought by Soileau, who was allegedly injured on or about June 1, 2016, when he was ordered by his supervisor to pull on a drill line, during his employment with Baywater as a derrick hand on an inland drilling barge known as *The Timbalier*.[1]

---

[1] Rec. Doc. 1, p. 2, ¶ 4, p. 3, ¶ 8; 24-2, p. 92.

Baywater, which is headquartered in Houma, Louisiana, is an inland barge drilling contractor whose employees perform occasional heavy labor work in the oilfield industry.[2] On or about July 15, 2014, Soileau submitted an application for employment with Baywater as a motorman.[3] In accordance with Baywater's hiring processes, Soileau was required to complete a medical history questionnaire, and undergo and pass a physical examination, prior to being hired.[4] Soileau attended his pre-employment physical, as scheduled by Baywater, on July 28, 2014, at a facility called All Industrial Medical Services ("All Industrial") in Houma, Louisiana.[5]

As part of the process, Soileau completed the mandatory "Pre-Employment Medical History Questionnaire" (the "Questionnaire").[6] The Questionnaire is a "critical component of the decision whether or not to pass an applicant, and it serves to help shape the nature and scope of the pre-employment evaluation."[7] The first page of the Questionnaire listed various conditions, as to each of which Soileau was required to check a box indicating "yes," "no," or "unsure."[8] Relevant to this lawsuit, Soileau checked the box indicating "no," as to each of the following:

[2] Rec. Docs. 22-3, p. 1, ¶ 2; 22-2, p. 1, ¶ 1; 24-9, p. 1, ¶ 1.
[3] Rec. Docs. 22-2, p. 1, ¶ 4; 24-9, p. 1, ¶ 4; 22-3, p. 2, ¶ 10 and pp. 4-6.
[4] Rec. Docs. 22-2, p. 1, ¶¶ 2, 3; 22-3, p. 2, ¶ 8; 24-9, p. 1, ¶¶ 2, 3.
[5] Rec. Docs. 22-2, p. 2, ¶¶ 5, 6; 24-9, p. 2, ¶¶ 5, 6; 22-3, p. 2, ¶¶ 7, 11; 22-4, p. 2, ¶ 6.
[6] Rec. Docs. 22-2, p. 2, ¶ 7; 22-4, p. 1, ¶ 4, p. 2, ¶¶ 6-8, and pp. 37-38.
[7] Rec. Doc. 22-4, p. 2, ¶ 5.
[8] Rec. Doc. 22-4, p. 37.

"back/neck problems," "disc problem neck/back," and "history of MRI."[9] On the

second page of the Questionnaire, Soileau answered "no" in response to the

following question: "Have you ever: . . . [h]ad back problems, back pain or back

injuries?"[10] On the "Respirator Medical Evaluation Form," Soileau also responded

"no" to the following question: "Do you, have you had, or has a doctor ever told you

that you have any of the following: . . . Back pain[?]"[11]

All Industrial's owner, Brandon Rhodes, is the nurse practitioner who

performed Soileau's pre-employment evaluation.[12] Prior to the physical

examination, Nurse Rhodes reviewed Soileau's written responses to the

Questionnaire.[13] As is his usual practice, Nurse Rhodes verbally asked Soileau about

certain parts of his body which were of particular importance to the physical

requirements of the job he was seeking.[14] The Questionnaire indicates that, upon

Nurse Rhodes' inquiries, Soileau verbally denied any history of back/neck problems,

disc problems in neck/back, or having previously had an MRI.[15] Nurse Rhodes'

---

[9] Rec. Docs. 22-4, p. 37; 22-2, p. 2, ¶¶ 8, 10; 24-9, p. 2, ¶¶ 8, 10.
[10] Rec. Docs. 22-4, p. 38; 22-2, p. 2, ¶ 8; 24-9, p. 2, ¶ 8.
[11] Rec. Docs. 22-4, p. 27; 22-2, p. 2, ¶ 11; 24-9, p. 2, ¶ 11.
[12] Rec. Doc. 22-4, p. 1, ¶ 2, p. 2, ¶ 6.
[13] *Id.* at p. 2, ¶ 8.
[14] *Id.* at p. 2, ¶ 9.
[15] Rec. Docs. 22-4, p. 3, ¶ 12; 22-2, p. 2, ¶ 9. During his deposition, Soileau did not challenge the assertion that he verbally denied having experienced prior back pain and did not recall verbally telling the examiner anything different than his written responses to the Questionnaire. Rec. Doc. 24-2, pp. 97, 103.

affidavit states that, had Soileau revealed a history of back issues and/or pain, he would have obtained and evaluated Soileau's prior medical records before deciding whether to pass or fail Soileau, because certain prior back issues may prevent an applicant from being cleared due to Baywater's physical labor requirements.[16]

Soileau's July 28, 2014 pre-employment screening also included a functional capacity evaluation, which he passed, and an MRI of his lumbar region.[17] Soileau's MRI results indicated "L4-5 degenerative disc changes with mild bilateral foraminal narrowing," as well as a "[s]mall L5-S1 central disc protrusion versus extrusion without canal or foraminal stenosis."[18] By affidavit, Nurse Rhodes testified that Soileau's MRI results would have changed the scope of Soileau's examination had Soileau also reported a history of chronic low back pain; however, no such history was reported either verbally during the examination or in writing on the Questionnaire.[19]

During his deposition, Soileau testified that he began experiencing back pain, in his "middle to lower back," about four or five years prior to his employment with Baywater.[20] He further testified that he saw physicians, Dr. Stacey Mayeaux and/or

---

[16] Rec. Doc. 22-4, p. 3, ¶ 13.
[17] Rec. Docs. 22-4, p. 3, ¶ 14, pp. 8, 14; 24-1, p. 2, ¶ 9.
[18] Rec. Doc. 22-4, p. 3, ¶ 15, p. 20, 22. A simultaneous x-ray of the lumbar spine indicated "[s]light scoliosis and mild multi-level disc narrowing." Rec. Doc. 22-4, p. 19.
[19] Rec. Doc. 22-4, p. 3, ¶ 16.
[20] Rec. Doc. 22-5, p. 2; Rec. Doc. 24-2, pp. 50, 54.

Dr. Freddie Fandal, as well as a physical therapist named Jerry Chamberlain, for his back pain.[21] Soileau first reported his back pain to Dr. Mayeaux on May 31, 2012, when he indicated that he strained his back loading a four-wheeler.[22] On that date, Dr. Mayeaux diagnosed Soileau with a lumbar strain and prescribed him Lortab, a narcotic pain medication, as well as a muscle relaxer and anti-inflammatory drugs.[23]

On January 14, 2013, Dr. Mayeaux again saw Soileau for low back pain, at which time his notes indicated that the pain had been intermittent since May 2012, resulting in Dr. Mayeaux classifying Soileau's low back pain as "chronic."[24] On that date, Dr. Mayeaux prescribed Mobic, an arthritis pill, and ordered an x-ray, which Soileau declined to have done.[25] On May 2, 2014, Soileau returned to Dr. Mayeaux with complaints of low back pain and mild spasm after "pulling on a fishing line"

---

[21] Rec. Docs. 22-5, pp. 2-3; 24-1, p. 3, ¶ 11; 22-6, pp. 4-5. The record is unclear, and potentially inconsistent, as to when Soileau began seeing Dr. Mayeaux. Dr. Mayeaux testified that his first visit with Soileau occurred on May 19, 2011, while Soileau testified that "he saw Dr. Mayeaux and/or Dr. Fandal," regularly, as early as September 9, 2008. *Compare* Rec. Docs. 22-6, p. 2, *with* Rec. Doc. 24-1, p. 3, ¶ 12. The Court notes that Drs. Mayeaux and Fandal practice together. Rec. Doc. 24-2, p. 26. However, Soileau then attributes all of his treatment to Dr. Mayeaux, when he references "twenty-two progress notes to the *same physician* where no complaints of back pain were recorded," between 2008 and 2014. Rec. Doc. 24, pp. 15-16 and n. 29 (referencing, by footnote, "certified records of *Dr. Mayeaux*" only) (emphasis added). The Court nevertheless finds these inconsistencies to be immaterial for purposes of this ruling. As noted herein, counsel for Baywater conceded during oral argument that there were at least some appointments with Dr. Mayeaux during which Soileau did not complain of back pain.
[22] Rec. Docs. 22-2, p. 3, ¶ 13; 24-9, p. 2, ¶ 13.
[23] Rec. Docs. 22-2, p. 3, ¶ 14; 24-9, p. 2, ¶ 14; 22-6, pp. 3-6; 22-7, p. 6.
[24] Rec. Docs. 22-2, p. 3, ¶ 15; 24-9, p. 3, ¶ 15; 22-6, pp. 6-7, 8.
[25] Rec. Docs. 22-2, p. 3, ¶ 15; 24-9, p. 3, ¶ 15; 22-6, p. 7

the day before, for which Dr. Mayeaux prescribed Norco, a narcotic pain medication, as well as another muscle relaxer.[26] On June 3, 2014, Soileau returned to Dr. Mayeaux with complaints of lumbar pain, at which time Dr. Mayeaux's notes describe Soileau's pain as "mild occasional low back pain," for which he prescribed (or "re-upped" his prescription for) Mobic.[27] Dr. Mayeaux's notes for that visit indicate that Soileau was "working full time offshore driller/supervisor," and was "not ready [to] xray unt[i]l next mo[nth] if still aches."[28]

As stated, Soileau alleges that the injury-causing accident occurred on or about June 1, 2016. Within a week, on June 7, 2016, Soileau returned to Dr. Mayeaux; however, he made no mention of a work-related accident.[29] Dr. Mayeaux's progress notes from that date indicate that Soileau had strained his back during the prior weekend, and during his deposition, Dr. Mayeaux confirmed that Soileau had not reported that the injury occurred at work, because the doctor "would always document that specifically."[30] Dr. Mayeaux's record of that visit connects the strained back to Soileau's "chron[ic] low back pain," for which the doctor

---

[26] Rec. Docs. 22-2, p. 3, ¶ 16; 24-9, p. 3, ¶ 16; 22-6, pp. 8-10.
[27] Rec. Docs. 22-2, p. 3, ¶ 17; 24-9, p. 3, ¶ 17; 22-6, p. 10; 22-7, p. 2.
[28] Rec. Doc. 22-7, p. 2.
[29] Rec. Docs. 24-8, p. 16; 22-6, p. 12.
[30] Rec. Docs. 24-8, p. 16; 22-6, pp. 12-13.

recommended that Soileau continue taking Norco and Mobic, and notes that Soileau planned to see the physical therapist the following day.[31]

Soileau then saw Dr. Mayeaux again on July 18, 2016, at which time Soileau relayed the same complaint of chronic, "mild to moderate" lumbar pain, made no mention of any accidents or injuries despite noting that he was still working, expressed no interest in physical therapy, and received another prescription for Norco.[32] During his deposition, Dr. Mayeaux confirmed that Soileau's complaints during that visit were "the same type of chronic complaints he'd been dealing with on and off for the last four years."[33] Dr. Mayeaux then ordered an MRI, which was performed on August 3, 2016, and referred Soileau to a spine specialist, Dr. Williams.[34] Soileau saw Dr. Mayeaux again on August 29, and September 28, 2016, at which time his complaints remained the same, insofar as he was experiencing chronic low back pain, with "no new complaints about his back pain."[35]

Soileau claims that the alleged injury occurred while he was pulling a drill line, at which time he felt and/or heard a pop in his back and fell to the ground.[36] He claims that the accident was witnessed by, and immediately reported to, the driller,

---

[31] Rec. Docs. 24-8, p. 16; 22-6, pp. 13-15.
[32] Rec. Doc. 24-8, p. 12; Rec. Doc. 22-6, p. 15, 16.
[33] Rec. Doc. 22-6, p. 15.
[34] Rec. Doc. 22-6, pp. 16, 18; 24-8, p. 11.
[35] Rec. Doc. 22-6, pp. 18-19.
[36] Rec. Docs. 24, p. 8; 24-1, p. 1, ¶ 2; 24-2, pp. 134-36; 24-7, p. 7.

Alex Boudwin, and witnessed by other crew members; however, no contemporaneous report was filed nor was an investigation conducted.[37] Soileau continued to work as a derrick hand for the remainder of his scheduled "hitch," and for a "few hitches after the accident."[38] Baywater's health, safety and environmental manager Ryne Malcom testified that he did not receive notice of Soileau's alleged injury until September 1, 2016, when he was contacted by a medical clinic seeking permission to perform an MRI on Soileau.[39] At that point, on behalf of Baywater, Mr. Malcolm scheduled three separate appointments for Soileau to be seen by Gulf Coast Orthopedics; however, Soileau never attended any of those appointments, and he was then terminated from Baywater.[40]

On June 1, 2017, Soileau filed the instant lawsuit, alleging claims under the Jones Act and general maritime law, including one for maintenance and cure payments, at issue herein. In response to the instant motion, Soileau has attached medical records from spine specialist and orthopedic surgeon, Dr. George Williams, which include the results of the MRI conducted on August 3, 2016.[41] That MRI indicated disc protrusions at L3-L4, L4-L5, and L5-S1, and noted the following

---

[37] Rec. Docs. 24-1, p. 1, ¶ 3; 24-5, p. 42, 44-45; 24-2, p. 116.
[38] Rec. Doc. 24-2, pp. 136-37; 24, p. 8.
[39] Rec. Doc. 24-5, pp. 34-36, 44-45.
[40] Rec. Doc. 24-5, pp. 40-41.
[41] Rec. Doc. 24-7, p. 12.

impressions: "mild multilevel lumbar spondylosis" and "right shallow broad-based posterior disc protrusion at L3-L4 slightly asymmetric to the right effacing the traversing right L4 nerve root."[42] On June 29, 2017, Dr. Williams examined Soileau and noted, *inter alia*, that Soileau "denie[d] any prior pain or injury to lumbar region prior to work accident . . . [but] would have occasional soreness in the back[;]" his "pain is quite severe and will radiate down the right leg[,]" and "pain radiates in the right S1 distribution."[43] The entirety of Dr. Williams' stated impression is "[l]ow back pain."[44] Dr. Williams' plan recommends "physical therapy and NSAIDS" and recognizes, in part, that Soileau has "a history of low back afflictions," while noting that the pain is now "much worse, [and] the radiculopathy is new[.]"[45] Dr. Williams opines that Soileau's current medical condition is "more probable than not, [due] to the work related accident dated 6/16/16."[46]

To date, Baywater has denied Soileau's requests for maintenance and cure payments and now seeks summary judgment as to his claim for same.

---

[42] *Id.*
[43] *Id.* at pp. 2, 4.
[44] *Id.* at p. 5.
[45] *Id.*
[46] *Id.* There is some discrepancy in the record regarding the date of the accident. However, regardless of whether the plaintiff alleges that he was injured on June 1, or June 16, 2016, there is no indication that the plaintiff ever, at any time thereafter but specifically in June or July 2016, reported a work- or non-work-related accident to Dr. Mayeaux.

<u>**ANALYSIS**</u>

**A.** <u>**THE SUMMARY JUDGMENT STANDARD**</u>

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[47] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[48]

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.[49] The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[50] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[51]

---

[47] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).
[48] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson*, 477 U.S. at 252); *Hamilton,* 232 F.3d at 477.
[49] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).
[50] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp.*, 477 U.S. at 323).
[51] *Washburn*, 504 F.3d at 508.

All facts and inferences are construed in the light most favorable to the nonmoving party.[52]

When both parties have submitted evidence of contradictory facts, a court is bound to draw all reasonable inferences in favor of the nonmoving party.[53] The court cannot make credibility determinations or weigh the evidence, and the nonmovant cannot meet his burden with unsubstantiated assertions, conclusory allegations, or a scintilla of evidence.[54] Under Rule 56(c)(3), "[t]he court need consider only the cited materials, but it may consider other materials in the record."[55] "When all of the summary judgment evidence presented by both parties could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is proper."[56]

Further, the Court notes that this case will be tried to the bench. The Fifth Circuit "has determined that a district court has somewhat greater discretion to consider what weight it will accord the evidence in a bench trial than in a jury trial."[57] "[W]here 'the evidentiary facts are not disputed, a court in a nonjury case may grant

---

[52] *Brumfield*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[53] *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005).

[54] *Id*.

[55] Fed. R. Civ. P. 56(c)(3).

[56] *Greene v. Syngenta Crop Protection, Inc.*, 207 F.Supp.2d 537, 542 (M.D. La. 2002) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)).

[57] *Matter of Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991).

summary judgment if trial would not enhance its ability to draw inferences and conclusions.'"[58] To that end, the Fifth Circuit has upheld "the grant of a summary judgment motion requiring the district court to make a factual determination 'in light of all the circumstances surrounding a given transaction.'"[59] "Although, as always, a district court must be aware that assessments of credibility come into sharper focus once live witnesses are heard," the Fifth Circuit has found "that even at the summary judgment stage a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result."[60] With these standards in mind, the Court turns now to the merits of the instant motion for partial summary judgment as to the plaintiff's claim for maintenance and cure payments only.

## B.   THE APPLICABLE LAW

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel."[61] "This requirement is fulfilled by providing food, lodging, and medical services until the seaman reaches maximum recovery, as determined by a physician,

---

[58] *Id*. at 398 (quoting *Nunez v. Superior Oil Co*., 572 F.2d 1119, 1124 (5th Cir. 1978)).
[59] *Id*. (quoting *Houston North Hosp. Properties v. Telco Leasing, Inc*., 680 F.2d 19, 22 (5th Cir. 1982)).
[60] *Id*. (citing *Nunez*, 572 F.2d at 1123-24).
[61] *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006) (citing *McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547, 548 (5th Cir. 1968)).

from the injury or ailment incurred while the seaman was in service of the vessel."[62]

"'Maintenance is a daily stipend for living expenses,' whereas 'cure is the payment of medical expenses.'"[63] "The vessel owner's obligation to provide this compensation does not depend on any determination of fault, but rather is treated as an implied term of any contract for maritime employment."[64] "A seaman may recover maintenance and cure even for injuries or illnesses pre-existing the seaman's employment unless that seaman knowingly or fraudulently concealed his condition from the vessel owner at the time he was employed."[65] "However, an employer is entitled to investigate a claim for maintenance and cure benefits and may rely on specified legal defenses to deny a claim."[66]

In *McCorpen v. Central Gulf Steamship Corp.*, the Fifth Circuit held that a seaman who "knowingly fail[s] to disclose a pre-existing physical disability during his [or her] pre-employment physical examination" may not recover maintenance and cure.[67] "In order to establish a *McCorpen* defense, an employer must show that (1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-

---

[62] *Wimberly v. Harvey Gulf Int'l Marine, LLC*, 126 F. Supp. 3d 725, 729–30 (E.D. La. 2015) (citing *Lewis v. Lewis & Clark Marine Inc.*, 531 U.S. 438, 441 (2001)).

[63] *Meche v. Doucet*, 777 F.3d 237, 244 (5th Cir. 2015) (citations omitted).

[64] *Id.*

[65] *Jauch*, 470 F.3d at 212 (citing *McCorpen*, 396 F.2d at 548).

[66] *Thomas v. Hercules Offshore Servs., L.L.C.*, 713 F. App'x 382, 386 (5th Cir. 2018).

[67] 396 F.2d at 548.

disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury complained of in the lawsuit."[68] As the Fifth Circuit has explained, the *McCorpen* defense recognizes an "[e]mployer['s need to be certain that each employee is physically able to do the work, not only to protect the employer from liability, but also to protect the employees."[69]

In the instant motion, Baywater alleges that it has established each element of the *McCorpen* defense, such that Soileau's claim for maintenance and cure payments should be dismissed. Soileau argues that Baywater has failed to satisfy *McCorpen* for the following reasons. First, Soileau claims that he did not intentionally misrepresent any medical facts, because he subjectively understood the Questionnaire to be asking whether he was *currently* experiencing back problems.[70] Second, even under the objective standard, Soileau argues that "a few isolated incidents of complaints of mild and occasional back pain to a family physician" cannot be deemed material.[71] Third, Soileau asserts that any alleged concealment was rendered irrelevant by the pre-employment MRI taken by Baywater, as well as

---

[68] *Meche*, 777 F.3d at 244-45 (citing *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005) and *McCorpen*, 396 F.2d at 548).

[69] *Brown*, 410 F.3d at 175.

[70] Rec. Docs. 24, pp. 12-13; 24-1, p. 3, ¶ 10; and 24-2, p. 103.

[71] Rec. Doc. 24, pp. 13-16.

Soileau's performance on the functional capacity evaluation and during his previous years of experience working for Axxis Drilling.[72] Fourth, Soileau claims that Baywater has failed to show a causal connection between his pre-employment "muscular strain" and his post-accident "herniated disk," such that the third prong is not satisfied.[73]

## C.    BAYWATER HAS ESTABLISHED A *MCCORPEN* DEFENSE

As stated, *McCorpen*'s first prong requires an employer to show that the claimant intentionally misrepresented or concealed medical facts. Importantly, "[i]n cases involving a pre-existing illness or other disability, the courts have made a distinction between nondisclosure and concealment."[74] Which test applies depends on whether the employer requires a pre-employment medical examination or interview. "[I]n the nondisclosure context, the defendant must prove that the plaintiff subjectively believed that [his] employer would deem [his] medical condition a matter of importance. The intentional misrepresentation/concealment standard, by contrast, is purely objective."[75]

---

[72] Rec. Doc. 24, pp. 14-15, 18, 22. As discussed below, there is no evidence in the record to support any contention that the plaintiff's prior employment with Axxis, and any medical records related thereto, is relevant to the instant motion or lawsuit.

[73] Rec. Doc. 24, pp. 23-24.

[74] *Meche*, 777 F.3d at 245 (quoting *McCorpen*, 396 F.2d at 548-49).

[75] *Id.*

Soileau argues that "[t]here is no proof that [he] intentionally concealed facts[,]" as "it was his understanding that [the Questionnaire] dealt with whether he was currently experiencing back problems."[76] Presumably to support a finding that Soileau misunderstood the Questionnaire, Soileau's opposition to the instant motion begins by pointing out that he "left school in the 8th grade and never returned to school."[77] This argument lacks merit and is not relevant to *McCorpen*'s test.

"*McCorpen*'s intentional concealment prong neither necessarily turns on credibility nor requires a subjective determination."[78] The Questionnaire was entitled "Pre-Employment Medical *History* Questionnaire;" was clearly worded and designed to elicit any past instances of relevant medical history; and was followed by Nurse Rhodes' verbal inquiries into Soileau's relevant medical history, specifically pertaining to any history of back or neck problems. Even Soileau admits that a truthful answer on the Questionnaire would have been that he had mild and occasional back pain, though he adds that it had never before interfered with his ability to do work.[79] "Seamen must not be allowed to blatantly misrepresent their medical history on questionnaires and then plead ignorance before a jury."[80]

---

[76] Rec. Doc. 24, pp. 12-13.
[77] *Id*. at p. 6. *But see* Rec. Doc. 24-2, pp. 34-36 (Soileau obtained his GED).
[78] *Brown*, 410 F.3d at 175.
[79] Rec. Doc. 24-9, p. 3, ¶ 19.
[80] *Brown*, 410 F.3d at 175.

Applying the purely objective standard, Baywater has established that Soileau intentionally concealed medical facts.

In connection with this argument, and again throughout his opposition, Soileau mentions his previous employment with Axxis Drilling, which he describes as Baywater's "predecessor company," from whose employment Soileau "transferred" to Baywater's employment, or was "essentially rehired," in 2014.[81] Not only would such an argument be irrelevant as to *McCorpen*'s first prong,[82] but the Court can find no evidence in the record to support these alleged facts.[83] Soileau himself testified that he was "terminated" from Axxis, "[a]bout a week before [he] started with Baywater[.]"[84] Further, on his July 15, 2014 application for employment with Baywater, Soileau indicated that his most recent job history was with Axxis, ending on July 10, 2014, and listed "not happy" as his reason for leaving.[85]

---

[81] *See* Rec. Doc. 24, pp. 7, 13, 14, 18, 20, 22, 24.

[82] This case is clearly distinguishable from *Meche*, wherein the employer (Key) relied upon the plaintiff's employment application, submitted to its predecessor company (Moncla), in which the plaintiff had "clearly concealed information about his prior spinal injuries from Moncla, and, by extension, from Key." *See Meche*, 777 F.3d at 247-48. Here, Soileau concealed his prior back problems from Baywater directly.

[83] As stated above, Rule 56(c)(3) states that "[t]he court need consider only the cited materials, but it may consider other materials in the record." Nonetheless, the Court has attempted to validate Soileau's Axxis-related statements through any evidence in the record but has found none. And, in fact, the Court has found evidence which contradicts those assertions, as indicated herein. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.").

[84] Rec. Doc. 24-2, pp. 63-64.

[85] Rec. Doc. 22-3, pp. 4-5.

Consistent with the Court's assessment of the record, Baywater's reply memorandum denies having access to Axxis' medical and/or personnel records.[86] Accordingly, given that the record fails to indicate the relevance of Soileau's previous employment with Axxis or any related MRI, and Soileau's counsel conceded the immaterial nature of these alleged facts during oral argument, there will be no further discussion thereof.

*McCorpen*'s second prong requires that Baywater show that the non-disclosed facts, *i.e.* Soileau's history of back pain, were material to Baywater's decision to hire Soileau. The type, duration or severity of the prior back problems is not the issue as suggested by Soileau. As the Fifth Circuit has stated, "the fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis."[87]

Baywater's Vice President of Administration, Lisa T. Williams, PHR, submitted an affidavit, wherein she states that "she is involved with Baywater's hiring process for new employees, and is familiar with the policies and procedures in place for it."[88] She explains that the pre-employment examination process

---

[86] Rec. Doc. 25, p. 5, n. 9; *see also*, note 76, *supra*.
[87] *Brown*, 410 F.3d at 175.
[88] Rec. Doc. 22-3, p.1, ¶ 4.

includes a physical and medical history questionnaire, "due to the occasional heavy labor associated with Baywater's work," and confirms that "prior back issues and/or a history of back problems are an important concern for Baywater, and are a consideration during the hiring process."[89] Further, she states that "Baywater was unaware of [Soileau's] prior back problems until the present lawsuit."[90]

Baywater likewise submitted the affidavit of Nurse Rhodes, who conducted Soileau's pre-employment examination. Nurse Rhodes stressed the importance of obtaining honest and accurate answers to the Questionnaire, "as it is a critical component of the decision whether or not to pass an applicant, and it serves to help shape the nature and scope of the pre-employment evaluation."[91] He confirmed, as indicated by markings on the Questionnaire, that he specifically, verbally followed-up on Soileau's written answers that he had never experienced back or neck problems.[92] Nurse Rhodes further declared:

> If Soileau had revealed a history of back issues and/or pain, [Nurse Rhodes] would have obtained Soileau's prior medical records and evaluated them before deciding whether to pass or fail him, as certain prior back issues will cause [Nurse Rhodes] not to clear an applicant for the type of physical labor he understands Baywater employees may be called upon to perform. . . . Soileau's MRI results, if it were coupled with a history of chronic low back pain, definitely would have changed the scope of his examination of Soileau. If Soileau truthfully answered

---

[89] *Id.* at p. 2, ¶¶ 5-9.
[90] *Id.* at p. 2, ¶ 13.
[91] Rec. Doc. 22-4, p. 2, ¶ 5.
[92] Rec. Doc. 22-4, p. 3, ¶ 12.

the [Q]uestionnaire by indicating that he had a history of chronic low back pain, the prior back complaints, coupled with the MRI results, would have led him to obtain Soileau's previous medical records and imaging from his previous physicians, which may have led to Soileau failing the pre-employment physical. Soileau's denial of prior low back pain was a significant factor in [Nurse Rhodes'] decision to declare that the physical was "passed."[93]

Because the Questionnaire, as well as Nurse Rhodes, specifically, and repeatedly, inquired as to whether Soileau had any history of back pain or problems, and such inquiry is rationally related to Soileau's physical abilities to perform his job duties for Baywater, his nondisclosure and concealment thereof was material to Baywater's decision to hire him.

As stated, even Soileau admits that a truthful answer on the Questionnaire would have been that he had mild and occasional back pain, although he argues that it had never interfered with his ability to do work prior to applying with Baywater.[94] Soileau does not dispute that an applicant's "significant and material prior back problems would be of importance to Baywater during its hiring process,"[95] but denies that his prior back problems could be categorized as such. And, despite Nurse Rhodes' testimony to the contrary, Soileau states that "[i]t is difficult to believe that Baywater would have not hired Soileau because of some isolated complaints of

---

[93] Rec. Doc. 22-4, pp. 3-4, ¶¶ 13, 16, 17, and 18.
[94] Rec. Doc. 24-9, p. 3, ¶ 19.
[95] Rec. Docs. 22-2, p. 4, ¶ 21; 24-9, p. 3, ¶ 21; 22-3, p. 2, ¶ 9.

occasional and mild back pain."[96] However, the Fifth Circuit has found no genuine dispute over materiality where the plaintiff's preexisting injuries would have led to further medical examinations before the employer made a decision on employment.[97] Furthermore, Soileau's assertion is contradicted by Dr. Mayeaux's records, as well as his own testimony.

The records of Dr. Mayeaux indicate Soileau was given hydrocodone (Lortab) for his back pain on May 31, 2012.[98] In December of 2012, he received a prescription for hydrocodone (Lortab), ostensibly for an injury to his hand.[99] On January 14, 2013, Dr. Mayeaux described the low back pain as having a duration of 7 months, at which time Soileau was continued on Mobic, a drug that first appeared on his chart on August 13, 2012, for "elbow pain."[100] Therefore, for nearly a year, Soileau was receiving medication for pain, including chronic low back pain.

After he had received prescriptions for hydrocodone, a muscle relaxer and an anti-inflammatory drug on May 2, 2014, one month later, on June 3, he was given a renewed prescription for Mobic with 6 refills for his chronic low back pain.[101]

---

[96] Rec. Docs. 24-9, p. 3, ¶ 20; 22-2, p. 4, ¶ 20; 22-4, p. 3, ¶ 13.
[97] *See Ramirez v. American Pollution Control Corp.,* 418 F. App'x 287, 290-91 (5th Cir. 2011).
[98] Rec. Doc. 24-8, pp. 20, 81.
[99] *Id.* at pp. 81, 93.
[100] *Id.* at pp. 90-91, 101.
[101] *Id.* at pp. 55-57.

Soileau's pre-employment physical was on July 28, 2014.[102] Thus, in addition to the history of chronic back pain for which medication was prescribed, Soileau was at least prescribed, if not actively taking, medication for chronic low back pain at the time of his physical, yet he denied taking any medication for that problem – consistent with the denials of prior back problems/pain.[103]

Further, his use of prescription medicine for "chronic pain" continued. On March 10, 2015, Dr. Mayeaux reported Soileau had lost his insurance and "been off meds."[104] On April 7, 2015, an x-ray of Soileau's lumbar spine was ordered because of "pain chronic," and Dr. Mayeaux's notes of that date indicate chronic low back pain.[105] More importantly, Dr. Mayeaux's notes indicate "narcotic use on street – uses 5-10 norco 10/mg/day – was using it for low back pain . . . says he had xrays at work – poss lumbar disc disease."[106] On May 1, 2015, Dr. Mayeaux reported "chron[ic] lumbar pain . . . denies using narcotic off [the] street any more [sic]."[107] When questioned about these entries, Soileau testified that he didn't know where he

---

[102] Rec. Doc. 24-4.

[103] Rec. Doc. 24-4, p. 34. The Court notes that, on the Questionnaire, Soileau was asked to list all medicines he was currently taking. In addition to amphetamine salts (Adderall, prescribed for Attention Deficit Disorder, *see* Rec. Doc. 24-2, p. 98), it appears that "Hydrocod" was also listed, followed by the phrase "no longer taking." During his deposition, when asked about the entry, Soileau disclaimed having written "no longer taking." Rec. Doc. 24-2, p. 99.

[104] Rec. Doc. 24-8, p. 49.

[105] *Id*. at pp. 46-48.

[106] *Id*. at p. 46.

[107] *Id*. at p. 43.

was getting the Norco, but in response to the question of whether he was taking it because his back hurt that badly or because he was having a drug problem, his response was "probably both."[108]

Soileau relies on *Parker v. Noble Drilling Corp.,* No. 98-1196, 1999 WL 104414 (E.D. La. Feb. 19, 1999) to show that Baywater has failed to satisfy *McCorpen*'s second, materiality prong. In *Parker*, the plaintiff filled out a pre-employment questionnaire, in which he disclosed previous knee and wrist surgeries but failed to disclose, either orally or in writing, that he had suffered a job-related injury four years earlier, which resulted in knee and shoulder surgery and back and neck pain. During the pre-employment screening process, the *Parker* plaintiff underwent an MRI that showed degenerative bulging lumbar disks. In analyzing the employer's *McCorpen* defense, Judge Duval found there to be questions of material fact as to all three prongs. First, the court found that it was unclear whether the failure to disclose back and neck pain, which did not require surgery and was ancillary to the primary injury to his knee and shoulder, was an intentional misrepresentation. Second, the court found materiality to be a question for the jury, where the employer claimed that it would not have hired the plaintiff had he disclosed prior back pain, yet it did so in the face of prior surgeries coupled with poor results on a pre-

---

employment MRI. And, as to the third prong, the employer had failed to show causality, as it merely showed that the plaintiff "complained of back pain on a prior occasion."[109]

*Parker* is distinguishable from the instant case given that Dr. Mayeaux had diagnosed and treated Soileau for chronic low back pain beginning in 2012, for which he consistently prescribed narcotic medication, both Lortab and Norco, in addition to muscle relaxers, non-narcotic and anti-inflammatory medications. Soileau also sought treatment of his back with a physical therapist, Jerry Chamberlain. While the Court recognizes that Soileau had appointments with Dr. Mayeaux during which he did not complain of back pain, and counsel for Baywater conceded same during oral argument, this fact does not erase or diminish Soileau's history of back pain and problems. Not only did Soileau's back pain date back to at least 2012, but he had sought and received treatment of his back problems within two months of submitting an application to work for Baywater. Soileau's reliance on *Parker* is misplaced, in light of his chronic low back pain, as well as the Court's finding that Baywater sought this information, which was rationally related to Soileau's anticipated job duties, and he intentionally concealed it during the hiring process.

---

[109] 1999 WL 104414 at * 2.

Soileau also argues that he passed his physical examination, including a functional capacity evaluation, "demonstrate[ing] a good technique and excellent effort" on strength tests. However, the Fifth Circuit has rejected this argument, where an employer, such as Baywater, relies at least in part on a prospective employee's medical history in evaluating whether or not to hire that applicant. For instance, in *Brown*, the Fifth Circuit found "irrelevant" the fact that the employee "could perform heavy labor tasks for his first few months on the job[,]" because the employer "based its hiring decision (at least, in part) upon whether applicants had 'Past or Present Back and Neck Trouble,' not whether they could, on the date of their application, complete difficult manual labor tasks."[110] Likewise, in *Wimberly*, Judge Lemelle found "irrelevant" the fact that the plaintiff had worked under the defendant-employer and its predecessor company "for a year before the accident and passed a physical capability test[,]" because his employer "based its hiring decision in part upon whether applicants experienced prior back and neck trouble, not their ability to 'on the date of their application, complete difficult manual labor tasks.'"[111]

The Court also notes that the *Parker* decision was published years before the Fifth Circuit decision in *Brown v. Parker Drilling, supra.* In addition to the most

---

[110] *Brown*, 410 F.3d at 175; *see also Thomas*, 713 F. App'x at 387 (noting same).
[111] *Wimberly*, 126 F. Supp. 3d at 733 (quoting *Brown*, 410 F.3d at 175).

recent decision by the circuit on this subject, *Thomas v. Hercules, supra,* numerous district courts which have looked at the *McCorpen* defense on summary judgment have granted judgment on the basis of the materiality standard set forth in *Brown*.[112]

Finally, *McCorpen*'s third prong requires that Baywater establish a connection between the withheld information and the injury complained of in the lawsuit. "[T]here is no requirement that a present injury be identical to a previous injury. All that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage."[113] "[T]he *McCorpen* defense will succeed if the defendant can prove that the old injury and the new injury affected the same body part."[114] As relevant here, the Fifth Circuit has found causality to be established where the "injuries were to the same location of the lumbar spine[.]"[115]

---

[112] *See, e.g., Chapman v. Spartan Offshore Drilling, LLC,* No. 15-cv-994, 2016 WL 1393490 (E.D. La. April 8, 2016) (Lemelle, J.); *Carter v. Parker Towing Co., Inc.,* No. 17-2634, 2018 WL 2065577 (E.D. La. May 3, 2018) (Knowles, M.J.); *Wheeler v. Transocean Offshore, USA. Inc.,* No. 16-8141, 2017 WL 4402433 (E.D. La. Oct. 2, 2017) (Zainey, J.); *Matter of M&M Wireline & Offshore Services, LLC,* No. 15-4999, 2016 WL 4508350 (E.D. La. Aug. 29, 2016) (Brown, J.); *Offshore Staffing Services of Acadiana LLC v. Farrell,* Nos. 11-2205 c/w 12-1866, 2012 WL 5512339 (W.D. La. Nov. 13, 2012) (Haik, J.).

[113] *Brown*, 410 F.3d at 176 (citation omitted).

[114] *Johnson v. Cenac Towing, Inc.*, 599 F. Supp. 2d 721, 728 (E.D. La. 2009) (Vance, J.) (citing *Brown*, 410 F.3d at 176).

[115] *Brown*, 410 F.3d at 176 ("Because Brown's injuries were to the same location of the lumbar spine, the causal link between the concealed information and the new injury was established at trial.")

Soileau characterizes his pre-employment back problems as "muscular strain" and his post-accident injury as a "herniated disk," in an effort to show that Baywater has failed to establish *McCorpen*'s causal connection. However, in *Wimberly*, Judge Lemelle rejected a similar argument and found the third prong satisfied despite the plaintiff's contention "that the prior issues with his back were primarily back strains and were not serious therefore not causally related to his current disc problems."[116] Again, the alleged injury need not be identical to the previous injury, nor must the previous injury be the "sole cause" in order to satisfy this third prong.[117]

Here, the alleged "injury [Soileau] suffered is virtually identical to the non-disclosed injuries."[118] As detailed herein, Dr. Mayeaux's progress notes from Soileau's appointments *after* the alleged injury-causing accident are entirely consistent with those that pre-dated it. Soileau's complaints both before and after June 1, 2016, were of low back pain, with no new complaints or reports of accidents or injuries. Dr. Mayeaux connected Soileau's post-accident, continuing complaints to his "chronic low back pain," for which Soileau continued to take narcotic and

---

[116] *Wimberly*, 126 F. Supp. 3d at 734.

[117] *Brown*, 410 F.3d at 176; *Johnson*, 599 F. Supp. 2d at 728–29 ("A successful *McCorpen* defendant need not submit any proof that the plaintiff's omission caused the injury. Rather, the *McCorpen* defense will succeed if the defendant can prove that the old injury and the new injury affected the same body part").

[118] *See Jauch*, 470 F.3d at 212.

non-narcotic pain medication, as well as undergo physical therapy.[119] Dr. Mayeaux confirmed that Soileau's complaints during his July 2016 visit, the month following the alleged accident, were "the same type of chronic complaints he'd been dealing with on and off for the last four years." This finding is consistent with the MRI results, as well as Dr. Williams' diagnosis that Soileau suffered from "[l]ow back pain," with "a history of low back afflictions," despite notes of the pain being worse, with new radiculopathy.

As the above-cited case law makes clear, there is no requirement that the present injury be identical to that which was concealed; rather, the two injuries must merely be to the same body part.[120] All medical evidence in the record, including the notes and deposition testimony of Dr. Mayeaux, the MRI and records of Dr. Williams, support a finding that Soileau's pre- and post-accident back problems or injuries are to the same body part, specifically his low back. *McCorpen*'s third prong is met.

---

[119] *See Kathryn Rae Towing, Inc. v. Buras*, No. 11-2936, 2013 WL 85210, at *6 (E.D. La. Jan. 7, 2013) (Vance, J.) (One month after the alleged accident, plaintiff "did not mention the accident to [his doctor], and [his doctor's] findings on [plaintiff's] back problems and pain were similar to his previous condition.").

[120] In the closing paragraph of his opposition, Soileau mentions for the first time that he is being treated for neck, as well as back, problems by Dr. Williams. Though he generally cites Dr. Williams' medical records *in globo*, without particular page cites, the Court finds no evidentiary basis for this claim, despite inviting same during oral argument, and pretermits any further discussion thereof.

In sum, "where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure."[121] Baywater has established each element of the *McCorpen* defense as a matter of law, such that it is entitled to summary judgment as to Soileau's claim for maintenance and cure. Out of an abundance of caution, the Court notes that nothing in today's ruling should be construed as a factual finding on the disputed question of whether or not the accident occurred as alleged by Soileau.

## CONCLUSION

For the reasons fully explained above, Baywater's motion for partial summary judgment (Rec. Doc. 22) is hereby GRANTED and the plaintiff's claim for maintenance and cure payments is hereby DISMISSED WITH PREJUDICE.

Signed at Lafayette, Louisiana on this 31st  day of July 2018.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[121] *Meche*, 777 F.3d at 245 (quoting *McCorpen*, 396 F.2d at 549).